RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 16a0012p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

JUAN ESQUIVEL-QUINTANA,

                *Petitioner*,

                No. 15-3101

  *v.*

LORETTA E. LYNCH, Attorney General,

                *Respondent*.

On Petition for Review from an Order
of the Board of Immigration Appeals.
No. A 047 719 438.

Argued: October 14, 2015

Decided and Filed: January 15, 2016

Before: BOGGS, SUTTON, and COOK, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Michael Carlin, LAW OFFICE OF MICHAEL CARLIN PLLC, Ann Arbor, Michigan, for Petitioner. Yedidya Cohen, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Michael Carlin, LAW OFFICE OF MICHAEL CARLIN PLLC, Ann Arbor, Michigan, for Petitioner. Yedidya Cohen, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. Sejal Zota, NATIONAL IMMIGRATION PROJECT OF THE NATIONAL LAWYERS GUILD, Boston, Massachusetts, Charles Roth, NATIONAL IMMIGRANT JUSTICE CENTER, Chicago, Illinois, Brian J. Murray, JONES DAY, Chicago, Illinois, Rajeev Muttreja, JONES DAY, New York, New York, for Amici Curiae.

    BOGGS, J., delivered the opinion of the court in which COOK, J., joined, and SUTTON, J., joined in part. SUTTON, J. (pp. 11–18), delivered a separate opinion concurring in part and dissenting in part.

## **OPINION**

BOGGS, Circuit Judge. The Immigration and Nationality Act defines "sexual abuse of a minor" as an aggravated felony. 8 U.S.C. § 1101(a)(43)(A). Aliens convicted of an aggravated felony face numerous criminal and civil consequences, including removal from the United States. *Id.* § 1227(a)(2)(A)(iii). In this case, we consider whether "sexual abuse of a minor" includes convictions under California Penal Code § 261.5(c) for unlawful sexual intercourse with a minor. Because the Board of Immigration Appeals permissibly interpreted "sexual abuse of a minor" as including convictions under section 261.5(c), we defer to the Board's interpretation and deny Esquivel-Quintana's petition.

I

Juan Esquivel-Quintana was admitted to the United States as a lawful permanent resident in 2000. In 2009, he pleaded guilty to unlawful sexual intercourse with a minor in California. The statute under which he was convicted provides that "[a]ny person who engages in an act of unlawful sexual intercourse with a minor who is more than three years younger than the perpetrator is guilty of either a misdemeanor or a felony." Cal. Penal Code § 261.5(c). Unlawful sexual intercourse is defined as "an act of sexual intercourse accomplished with a person who is not the spouse of the perpetrator, if the person is a minor," and a minor is "a person under the age of 18." *Id.* § 261.5(a). So, a twenty-year-old who has sex with a seventeen-year-old or a fifteen-year-old who has sex with a twelve-year-old could be convicted under the statute.

Subsequently, Esquivel-Quintana moved to Michigan. While he was in Michigan, the Department of Homeland Security initiated removal proceedings based on 8 U.S.C. § 1227(a)(2)(A)(iii), which states that an alien can be removed if he is convicted of an aggravated felony such as "sexual abuse of a minor," *id.* § 1101(a)(43)(A). An immigration judge ruled that Esquivel-Quintana's conviction under section 261.5(c) constituted "sexual abuse of a minor" and ordered him removed to Mexico. Esquivel-Quintana appealed.

A three-member panel of the Board of Immigration Appeals ruled against Esquivel-Quintana, concluding that "sexual abuse of a minor" includes convictions under section 261.5(c). *In re Esquivel-Quintana*, 26 I. & N. Dec. 469, 477 (B.I.A. 2015).  First, the Board stated that it would determine whether convictions under section 261.5(c) categorically constitute "sexual abuse of a minor" without looking at the specific facts of the case, such as Esquivel-Quintana's age or his victim's. *Id.* at 472.  The Board did so based on *Taylor v. United States*, 495 U.S. 575 (1990), and *Descamps v. United States*, 133 S. Ct. 2276 (2013), which call for a categorical approach to assessing prior convictions in sentencing under the Armed Career Criminal Act.  The Board went on to conclude that "sexual abuse of a minor" categorically encompassed convictions under section 261.5(c).  The Board stated that "in the context of State statutory rape offenses, a statute that includes 16- or 17-year-olds must also contain a meaningful age differential to constitute 'sexual abuse of a minor.'" *Esquivel-Quintana*, 26 I. & N. Dec. at 475.  The Board did not specify exactly what constitutes a "meaningful" age differential, but held that the age differential in California's statute—which requires an age gap of more than three years—was meaningful.  Esquivel-Quintana now petitions for review of the Board's decision.

II

*Chevron* supplies the appropriate framework for reviewing the Board's interpretation of "sexual abuse of a minor." *Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984).  The Supreme Court and Sixth Circuit have repeatedly held that *Chevron* deference applies to the Board's interpretations of immigration laws. *See Scialabba v. Cuellar de Osorio*, 134 S. Ct. 2191, 2203 (2014) (plurality opinion); *id.* at 2214 (Roberts, C.J., concurring in the judgment); *Negusie v. Holder*, 555 U.S. 511, 516–17 (2009); *INS v. Aguirre-Aguirre*, 526 U.S. 415, 424–25 (1999); *Kellermann v. Holder*, 592 F.3d 700, 702 (6th Cir. 2010); *Singh v. Gonzales*, 451 F.3d 400, 403 (6th Cir. 2006).  Several of our sister circuits have specifically applied *Chevron* in cases involving the Board's interpretation of "sexual abuse of a minor." *See Velasco-Giron v. Holder*, 773 F.3d 774, 776 (7th Cir. 2014); *Restrepo v. Attorney Gen. of the U.S.*, 617 F.3d 787, 796 (3d Cir. 2010); *Mugalli v. Ashcroft*, 258 F.3d 52, 60 (2d Cir. 2001).

Two circuits have reached a different conclusion. *Amos v. Lynch*, 790 F.3d 512, 518–20 (4th Cir. 2015); *Estrada-Espinoza v. Mukasey*, 546 F.3d 1147, 1156–58 (9th Cir. 2008) (en

banc). But those decisions offer little guidance here. Neither *Amos* nor *Estrada-Espinoza* involved a published, precedential BIA opinion interpreting the relevant state statute. *Amos*, 790 F.3d at 518 ("However, the principles of *Chevron* deference are not applicable to the Board's decision in Amos's case because, although issued by a three-judge panel of the BIA, it was an unpublished decision that does not carry precedential weight."); *Estrada-Espinoza*, 546 F.3d at 1157 (noting that the BIA's decision was a "single-judge, unpublished, non-precedential" decision). Here, conversely, we owe the BIA's precedential decision *Chevron* deference. *See Lockhart v. Napolitano*, 573 F.3d 251, 262 (6th Cir. 2009). Although *Amos* and *Estrada-Espinoza* could be read to suggest that courts may forego *Chevron* deference to *published* BIA precedents solely because they establish broad standards, that proposition is, as the Seventh Circuit recently noted, at odds with basic black-letter administrative law. *Velasco-Giron*, 773 F.3d at 779; *see also NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 294 (1974); *SEC v. Chenery Corp.*, 332 U.S. 194, 203 (1947). There is not "a single case in which a general conferral of rulemaking or adjudicative authority has been held insufficient to support *Chevron* deference for an exercise of that authority within the agency's substantive field." *City of Arlington v. FCC*, 133 S. Ct. 1863, 1874 (2013).

*Generic-Definition Argument.* Esquivel-Quintana is misguided in relying on *Taylor* for the proposition that we must ignore *Chevron* and create our own definition of "sexual abuse of a minor." *Taylor* involved the Armed Career Criminal Act, not the Immigration and Nationality Act. While it is true that both statutes attach consequences to certain prior convictions, there are important differences as well.

The generic-definition approach established in *Taylor* with respect to the crime of burglary is intimately connected with the Armed Career Criminal Act's legislative history. 495 U.S. at 581–87. The *Taylor* Court began by discussing the first version of the Armed Career Criminal Act, passed in 1984, which specifically defined "burglary" as "any felony consisting of entering or remaining surreptitiously within a building that is property of another with intent to engage in conduct constituting a Federal or State offense." *Id.* at 581. The Court then recounted how Congress deleted this definition, quoting extensively from committee hearing testimony and statements by members of Congress. *Id.* at 582–87. The Court concluded that "[t]he legislative

history as a whole suggests that the deletion of the 1984 definition of burglary may have been an inadvertent casualty of a complex drafting process," and on that basis adopted a generic definition of burglary. *Id.* at 589–90. Given *Taylor*'s intimate connection with the Armed Career Criminal Act's legislative history, we decline to read *Taylor* as requiring us to adopt an identical approach to interpreting the phrase "sexual abuse of a minor," which was added to the Immigration and Nationality Act in 1996. *See* Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009–546, 3009–627.

*Rule of Lenity*. Esquivel-Quintana argues that we should apply the rule of lenity and construe "sexual abuse of a minor" in his favor. According to the rule of lenity, when a criminal statue is ambiguous, that ambiguity must be resolved in the defendant's favor. While this case is civil in nature, Esquivel-Quintana contends that we should still apply the rule of lenity because the definition of "sexual abuse of a minor" has criminal applications.

The phrase "sexual abuse of a minor" is listed in 8 U.S.C. § 1101(a)(43)(A) as one of many crimes that constitute an aggravated felony. In addition to serving as a basis for removal, *id.* § 1227(a)(2)(A)(iii), an aggravated-felony conviction can also result in an enhanced sentence for aliens who are subsequently convicted of the crime of illegal reentry, *id.* § 1326(b)(2). The term aggravated felony is also used to define the crime of assisting certain inadmissible aliens with entering the United States illegally. *Id.* § 1327. Thus, the phrase "sexual abuse of a minor" has both civil and criminal applications.

An increasingly emergent view asserts that the rule of lenity ought to apply in civil cases involving statutes that have both civil and criminal applications. *See Whitman v. United States*, 135 S. Ct. 352, 352–54 (2014) (Scalia, J., statement respecting denial of certiorari); *Carter v. Welles-Bowen Realty, Inc.*, 736 F.3d 722, 729–36 (6th Cir. 2013) (Sutton, J., concurring). This view is based on two principles. First, statutory terms should not have different meanings in different cases—"a statute is not a chameleon." *Carter*, 736 F.3d at 730. Second, ambiguous statutes must be construed in favor of defendants under the rule of lenity. The rule of lenity ensures that the public has adequate notice of what conduct is criminalized, and preserves the separation of powers by ensuring that legislatures, not executive officers, define crimes. Taken

together, these two principles lead to the conclusion that the rule of lenity should apply in civil cases involving ambiguous statutes with criminal applications.

There are compelling reasons to apply the rule of lenity in such cases. Giving deference to agency interpretations of ambiguous laws with criminal applications would allow agencies to "create (and uncreate) new crimes at will, so long as they do not roam beyond ambiguities that the laws contain." *Whitman*, 135 S. Ct. at 353. Writing criminal laws is the legislature's prerogative, not the executive's. Furthermore, deferring to agency interpretations of criminal laws violates the principle that "criminal laws are for courts, not for the Government, to construe." *Abramski v. United States*, 134 S. Ct. 2259, 2274 (2014). Left unchecked, deference to agency interpretations of laws with criminal applications threatens a complete undermining of the Constitution's separation of powers.

Nonetheless, while this view is increasing in prominence, the Supreme Court has not made it the law. To the contrary, the Court has reached the opposite conclusion. In *Babbitt v. Sweet Home Chapter of Communities for a Great Oregon*, the Court deferred to the Secretary of the Interior's definition of the term "take" in the Endangered Species Act of 1973, even though violations of the act could be enforced by criminal penalties. 515 U.S. 687, 703–04 (1995). The Court expressly considered and rejected the rule of lenity: "We have never suggested that the rule of lenity should provide the standard for reviewing facial challenges to administrative regulations whenever the governing statute authorizes criminal enforcement." *Id.* at 704 n.18.

Since then, the Supreme Court *has* suggested that the rule of lenity should apply in such cases. In *Leocal v. Ashcroft*, the Court omitted any discussion of *Chevron* in reviewing a Board of Immigration Appeals decision interpreting 8 U.S.C. § 1101(a)(43)(F). 543 U.S. 1, 8–13 (2004). That provision states that a conviction for a "crime of violence (as defined in section 16 of Title 18, but not including a purely political offense)" counts as an aggravated felony if it is punishable by at least one year of imprisonment. The Court held that "crime of violence" did not include the petitioner's Florida DUI conviction, and added in dicta in a footnote:

> Even if § 16 lacked clarity on this point, we would be constrained to interpret any ambiguity in the statute in petitioner's favor. Although here we deal with § 16 in the deportation context, § 16 is a criminal statute, and it has both criminal and noncriminal applications. Because we must interpret the statute consistently,

>whether we encounter its application in a criminal or noncriminal context, the rule of lenity applies.

*Id.* at 11 n.8. Similarly, in *Kasten v. Saint-Gobain Performance Plastic Corp.*, 131 S. Ct. 1325, 1336 (2011), and *Maracich v. Spears*, 133 S. Ct. 2191, 2209 (2013), the Court suggested that the rule of lenity could apply if an ambiguity existed, but had no occasion to apply it because the statute was unambiguous.

While the Court has begun to distance itself from *Babbitt*, we do not read dicta in *Leocal* and subsequent cases as overruling *Babbitt*, or requiring that we apply the rule of lenity here in Esquivel-Quintana's civil removal proceeding. As an "inferior" court, our job is to adhere faithfully to the Supreme Court's precedents. The Supreme Court has said that we must follow *Chevron* in cases involving the Board's interpretations of immigration laws. *See Scialabba*, 134 S. Ct. at 2203 (plurality opinion); *id.* at 2214 (Roberts, C.J., concurring in the judgment); *Negusie*, 555 U.S. at 516–17; *Aguirre-Aguirre*, 526 U.S. at 424–25. This is not an "extraordinary" case. *King v. Burwell*, 135 S. Ct. 2480, 2488 (2015). *Chevron* applies.

III

Under *Chevron*, we employ the traditional tools of statutory interpretation and ask whether the statute is ambiguous; if it is, we defer to the agency's permissible interpretations. As some have noted, a more elegant formulation of the inquiry might simply be: Has the agency permissibly interpreted the statute? *See, e.g., Entergy Corp. v. Riverkeeper, Inc.*, 556 U.S. 208, 218 & n.4 (2009); *Singh*, 451 F.3d at 403 ("We . . . defer to the BIA's reasonable interpretations of the INA." (quoting *Patel v. Gonzales*, 432 F.3d 685, 692 (6th Cir. 2005))); Matthew C. Stephenson & Adrian Vermeule, Chevron *Has Only One Step*, 95 Va. L. Rev. 597 (2009).

The Board permissibly interpreted "sexual abuse of a minor" as including violations of California Penal Code § 261.5(c). When Congress used the ambiguous words "sexual abuse of a minor," it declined to specify a particular age of majority or age differential for statutory rape. Nowhere in the statute did Congress specify the definitions of "sexual abuse" or "minor." Congress left these questions open to interpretation by the Board of Immigration Appeals. *See Contreras v. Holder*, 754 F.3d 286, 293 (5th Cir. 2014) ("Here, there is no question that Congress has not directly spoken on the definition of sexual abuse of a minor.").

Faced with this ambiguity, the Board has interpreted "sexual abuse" by referring to the definition of the term in 18 U.S.C. § 3509(a)(8). *In re Rodriguez-Rodriguez,* 22 I. & N. Dec. 991, 995–96 (B.I.A. 1999). That provision defines "sexual abuse" as "the employment, use, persuasion, inducement, enticement, or coercion of a child to engage in, or assist another to engage in, sexually explicit conduct or the rape, molestation, prostitution, or other form of sexual exploitation of children, or incest with children." Furthermore, the Board draws its definition of "minor" from 18 U.S.C. § 3509(a)(2), which defines a "child" as a person under eighteen. *In re V-F-D-,* 23 I. & N. Dec. 859, 862 (B.I.A. 2006). In choosing eighteen as the age of majority, the Board acknowledged the existence of a statute—18 U.S.C. § 2243(a), titled "sexual abuse of a minor or ward"—that makes it a federal crime to have sex with a person who is less than sixteen years old, at least twelve years old, and at least four years younger than the perpetrator. *Id.* at 861–62. The Board declined to limit the meaning of "sexual abuse of a minor" to this particular definition, drawn from a different statute passed at a different time, because in its view "Congress intended to expand, rather than limit, the age at which a person is considered a minor." *Id.* at 862 n.7. The Board elaborated on its interpretation of "sexual abuse of a minor" in this case, holding that the phrase includes convictions under a state statutory-rape law that protects sixteen- and seventeen-year-old victims while also requiring a meaningful age differential between the perpetrator and the victim. *Esquivel-Quintana*, 26 I. & N. Dec. at 477.

Nothing forbids the Board's interpretation. Indeed, there are strong arguments that support it. As the Seventh Circuit has noted, multiple criminal provisions of the United States Code define a "minor" as a person under eighteen. *Velasco-Giron*, 773 F.3d at 775. For the crime of "sexual exploitation of children," "minor" is defined as any person under the age of eighteen. 18 U.S.C. §§ 2251, 2256(1). Eighteen is also the age of majority for the crime of transporting a "minor" with intent to engage in criminal sexual activity. 18 U.S.C. § 2423(a). The Fifth Circuit has held that, as a matter of federal law under the Sentencing Guidelines, a "minor" in the phrase "sexual abuse of a minor" is a person under the age of eighteen. *United States v. Rodriguez*, 711 F.3d 541, 548 (5th Cir. 2013) (en banc). With so many sources defining the age of majority as eighteen, the Board's interpretation certainly qualifies as permissible.

Following the narrow definition of "minor" in § 2243(a) is neither compelled nor sensible. That statute applies only when the sexual-abuse victim is at least twelve years old. Victims younger than twelve are protected by a separate statute, § 2241(c), under the crime of "aggravated sexual abuse." Using § 2243(a) as the sole definer of "minor" would mean that abuse against an eleven-year-old does not constitute "sexual abuse of a minor." Furthermore, it would mean that a seventeen-year-old abusing a twelve-year-old has committed "sexual abuse of a minor," but a fifteen-year-old doing the same thing has not done so.

The age requirements of § 2243(a) were crafted with § 2241(c) in mind. Those two provisions were enacted side-by-side in the Sexual Abuse Act of 1986, Pub. L. No. 99-646, § 87 100 Stat. 3620, 3620–21, which came into effect ten years before the phrase "sexual abuse of a minor" was added to 8 U.S.C. § 1101(a)(43)(A) in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, 110 Stat. at 3009–627. We should not haphazardly import the requirements of § 2243(a) into a completely different statute.

Congress could have included a cross-reference to § 2243(a) if it wanted to incorporate that definition of statutory rape. The Immigration and Nationality Act is replete with cross-references to federal statutes defining crimes that count as aggravated felonies. *See* 8 U.S.C. § 1101(a)(43)(B), (C), (D), (E), (F), (H), (I), (J), (K)(ii)–(iii), (L), (M)(ii), (N), (O), (P). When Congress declined to cross-reference a federal statute, it did so because it wanted to sweep in a broad array of state-law convictions. *Cf.* 8 U.S.C. § 1101(a)(43) ("The term [aggravated felony] applies to an offense described in this paragraph whether in violation of Federal or State law . . . ."). "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983). Importing word-for-word the statutory-rape requirements of § 2243(a) would be contrary to Congress's intent to allow state-law convictions to serve as grounds for removal.

The Second, Third, and Seventh Circuits all explicitly considered and rejected the argument that "sexual abuse of a minor" is limited to statutes that go no further than § 2243(a). The Second Circuit concluded that it is "unlikely in the extreme that Congress intended such a lowest common denominator result," and upheld the removal of an alien convicted under New

York's statutory-rape law. *Mugalli*, 258 F.3d at 60. The Third Circuit stated that it would not "conjoin the meaning of words used in separate and distinct statutes," and upheld the removal of an alien convicted under New Jersey's "aggravated criminal sexual contact" law. *Restrepo*, 617 F.3d at 794. The Seventh Circuit observed that the Board "must administer . . . 8 U.S.C. § 1101(a)(43)(A), not 18 U.S.C. § 2243(a)," and upheld the removal of an alien convicted under the precise California statute involved in this case. *Velasco-Giron*, 773 F.3d at 777. We join the Second, Third, and Seventh Circuits in rejecting the unwarranted adoption of § 2243(a), and hold that the Board permissibly interpreted "sexual abuse of a minor" as including convictions under California Penal Code § 261.5(c).

IV

If Congress had supplied its own definition of "sexual abuse of a minor" in 8 U.S.C. § 1101(a)(43)(A), this case would be easy. But Congress did not. That is why the Board of Immigration Appeals chose to interpret the phrase through case-by-case adjudication. Supreme Court and Sixth Circuit precedent require us to defer to the Board's interpretation if it is permissible.

The Board permissibly interpreted "sexual abuse of a minor" as encompassing convictions under California Penal Code § 261.5(c). Nothing in the statute forbids this interpretation. Esquivel-Quintana's petition is DENIED.

---

**CONCURRING IN PART AND DISSENTING IN PART**

---

SUTTON, Circuit Judge, concurring in part and dissenting in part. I agree with every part of the court's opinion but one: that a sentence from a footnote in a 1995 Supreme Court opinion requires us to apply *Chevron* deference, as opposed to the rule of lenity, to an agency interpretation of an ambiguous statute that has civil *and* criminal applications. *See Babbitt v. Sweet Home Chapter of Communities for a Great Or.*, 515 U.S. 687, 794 n.18 (1995).

Let me start with our many areas of agreement.

*Chevron* permits agencies to fill gaps in *civil* statutes that Congress has delegated authority to the agency to interpret. *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984). Under the doctrine, courts presume that, when Congress leaves an ambiguity in an agency-administered statute, it intends the agency to fill the gap. *Id.* at 843–44.

But *Chevron* has no role to play in construing *criminal* statutes. In 227 years and counting, the federal courts have never presumed that, when an ambiguity arises in a criminal statute, the congressional silence signals that Congress wants an executive-branch agency to fill the gap. For all of the theories of *Chevron* that have filled the U.S. Reports and the Federal Reporter, to say nothing of the law journals, the idea that *Chevron* is a tool for construing criminal statutes has yet to make an appearance. That is because criminal statutes "are for courts, not for the Government, to construe." *Abramski v. United States*, 134 S. Ct. 2259, 2274 (2014). The doctrine does not give the Department of Justice (or for that matter any other federal agency) *implied* gap-filling authority over ambiguous criminal statutes.

Otherwise, that would leave this distasteful combination: The prosecutor would have the explicit (executive) power to enforce the criminal laws, an implied (legislative) power to fill policy gaps in ambiguous criminal statutes, and an implied (judicial) power to interpret ambiguous criminal laws. *Cf.* The Federalist No. 47, at 297–99 (James Madison) (Clinton Rossiter ed., 1961). And it would permit this aggregation of power in the one area where its division matters most: the removal of citizens from society.

There may be good reason to debate the merits of *Chevron* today. *Compare* Philip Hamburger, Is Administrative Law Unlawful? (2014), *with* Adrian Vermeule, *No*, 93 Tex. L. Rev. 1547 (2015) (book review). But all can agree that, whatever the connection between ancient royal prerogatives and the like to modern agency law, *Chevron* has no role to play in the interpretation of criminal statutes.

The application of *Chevron* to criminal laws also would leave no room for the rule of lenity, a rule that resolves ambiguities in criminal statutes in favor of the individual and a rule of construction that Chief Justice Marshall described as "perhaps not much less old than construction itself." *United States v. Wiltberger*, 18 U.S. (5 Wheat.) 76, 95 (1820). The rule "rests on concerns about notice (the state ought to provide fair warning of what violates the criminal laws) and separation of powers (Congress, not agencies or courts, defines crimes)." *Carter v. Welles-Bowen Realty, Inc.*, 736 F.3d 722, 729 (6th Cir. 2013) (Sutton, J., concurring).

So far so good.

But what happens when the same statute has criminal *and* civil applications? May Congress sidestep these requirements by giving criminal statutes a civil application? The answer is no. The courts must give dual-application statutes just one interpretation, and the criminal application controls. Statutes are not "chameleon[s]" that mean one thing in one setting and something else in another. *Id.* at 730. Because a single law should have a single meaning, the "lowest common denominator"—including all rules applicable to the interpretation of criminal laws—governs all of its applications. *Clark v. Martinez*, 543 U.S. 371, 380 (2005). That explains why *United States v. Thompson/Center Arms Co.* applied the rule of lenity to a civil tax case that turned on language that had civil and criminal applications. 504 U.S. 505, 517–18 & n.10 (plurality opinion); *id.* at 519 (Scalia, J., concurring in the judgment). Time, time, and time again, the Court has confirmed that the one-interpretation rule means that the criminal-law construction of the statute (with the rule of lenity) prevails over the civil-law construction of it (without the rule of lenity). When a single statute has twin applications, the search for the least common denominator leads to the least liberty-infringing interpretation. *See, e.g., Maracich v. Spears*, 133 S. Ct. 2191, 2209 (2013); *Kasten v. Saint-Gobain Performance Plastics Corp.*,

563 U.S. 1, 16 (2011); *Clark*, 543 U.S. at 380; *Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004); *Scheidler v. Nat'l Org. for Women*, 537 U.S. 393, 408–09 (2003).

The provision at issue in today's case is subject to the one-statute/one-interpretation rule because it has criminal and civil applications. The Immigration and Nationality Act makes a state or federal conviction for "sexual abuse of a minor" an "aggravated felony." 8 U.S.C. § 1101(a)(43)(A). The Act subjects aliens who have committed aggravated felonies (1) to civil consequences, most notably removal from the country, *id.* § 1227(a)(2)(A)(iii); *see also id.* § 1229b(a)(3), and (2) to criminal consequences, most notably increasing the maximum prison term for illegal reentry into the United States, *id.* § 1326(b)(2); *see also id.* § 1327.

The phrase "sexual abuse of a minor" is ambiguous as applied to the California law that Esquivel-Quintana violated. The state law prohibits sexual intercourse with anyone under eighteen, provided the perpetrator is not the victim's spouse and is more than three years older than the victim. Cal. Penal Code § 261.5(a), (c). The age requirement found in statutory-rape statutes like this one turns on the premise that those below a certain age generally cannot consent to sex. The ambiguity arises over when a "minor" can consent and when the sexual act ceases to be abusive. The minimum conduct criminalized by the California law involves seventeen-year-old victims. *Id.* § 261.5(a). Because the meaning of "sexual abuse of a minor" is a matter of federal law, the question is whether California's statutory-rape law includes these victims under a "'generic' federal definition." *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684 (2013).

A division in the circuits over the point suggests this answer: maybe, maybe not. One court has concluded that the phrase includes statutory-rape convictions involving seventeen-year-old victims. *See, e.g., Contreras v. Holder*, 754 F.3d 286, 294–96 (5th Cir. 2014). One court has said it does not. *E.g., Estrada-Espinoza v. Mukasey*, 546 F.3d 1147, 1157 n.7, 1158–60 (9th Cir. 2008) (en banc). And at least one court isn't sure. *E.g., Velasco-Giron v. Holder*, 773 F.3d 774, 776–78 (7th Cir. 2014).

The rest of the federal criminal code doesn't make things any easier. Title 18 includes a crime entitled "sexual abuse of a minor," a statutory-rape crime that requires the victim to be under *sixteen*. 18 U.S.C. § 2243(a). But it also includes protections for "child" victims of "sexual abuse" in a setting in which the legislature uses the terms "minor" and "child"

interchangeably, *see id.* § 2251, and applies those protections to victims under *eighteen*, *id.* § 3509(a)(2), (8). As a matter of history, the term "minor" has always been a fluid concept. It referred to those under twenty-one at the founding. *See* 1 William Blackstone, Commentaries *463.

Adding to the ambiguity is the question of perspective—which of two ways the interpreter looks at the statute and how closely it ties the word "minor" to the term "sexual abuse." *Cf. United States v. Castleman*, 134 S. Ct. 1405, 1411–12 (2014); *id.* at 1420 (Scalia, J., concurring in part and concurring in the judgment). At one end, the word "minor" taken by itself might generally be said to refer to "[s]omeone who has not reached full legal age." Black's Law Dictionary 1147 (10th ed. 2014). The full legal age, the "age of majority," is typically *eighteen*—at least in most instances today. *Id.* at 73. This approach led the Fifth Circuit and the Board of Immigration Appeals to conclude "sexual abuse of a minor" captures many statutory-rape crimes, with each State allowed to set an age (no higher than eighteen) below which minors generally cannot consent. *Contreras*, 754 F.3d at 294–96; *In re Esquivel-Quintana*, 26 I. & N. Dec. 469, 471 (B.I.A. 2015); *see also United States v. Rodriguez*, 711 F.3d 541, 559–62 (5th Cir. 2013) (en banc).

At the other end, a court might just as fairly focus on the reality that the word "minor" is tied to "sexual abuse" and statutory-rape laws. In that context, the word "minor" would not necessarily refer to "full legal age" but to the age at which a State no longer deems sex nonconsensual (and therefore abusive). *See* Black's Law Dictionary 1451. That age, the "age of consent," is typically *sixteen*. *Id.* at 73; *see United States v. Rangel-Castaneda*, 709 F.3d 373, 377 (4th Cir. 2013). This approach led the Ninth Circuit to decide that statutory-rape convictions amount to "sexual abuse of a minor" only if they require victims to be below the age of sixteen. *Estrada-Espinoza*, 546 F.3d at 1158. The Fourth Circuit took a similar approach when interpreting the same phrase in the Sentencing Guidelines. *Rangel-Castaneda*, 709 F.3d at 380–81.

Either reading has much to commend it, making the phrase ambiguous and making this a classic occasion for applying the rule of lenity. All clues considered, the phrase "sexual abuse of

a minor" may, but may not, include convictions under California's § 261.5(c), and for that reason the rule of lenity should end the case in favor of the immigrant.

The application of *Chevron* to this ambiguity of course leads to a different result. A statute sufficiently ambiguous to invoke the rule of lenity assuredly is sufficiently ambiguous to trigger *Chevron* deference. And adjudicative decisions by the Board typically receive *Chevron* deference. *See, e.g.*, *INS v. Aguirre-Aguirre*, 526 U.S. 415, 424–25 (1999). That means, as the court explains, that the Board's decision that Esquivel-Quintana's § 261.5(c) conviction amounts to "sexual abuse of a minor" prevails under *Chevron* deference. But it also means, as the court explains, that this interpretation would not prevail under the rule of lenity, where "sexual abuse of a minor" would cover no more than those statutory-rape crimes that set the age of consent at sixteen or less.

Yet the application of *Chevron* in this setting, as the court acknowledges, "threatens a complete undermining of the Constitution's separation of powers," while the application of the rule of lenity "preserves" them by maintaining the legislature as the creator of crimes. *Supra* at 5–6. Lenity also ensures fair notice of criminal consequences, precludes the same agency from altering criminal laws back and forth over time (even over conflicting judicial interpretations, *see Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 980–85 (2005), and even without input from Congress), and ensures that the same "[r]ules of interpretation bind all interpreters, administrative agencies included." *Carter*, 736 F.3d at 729, 731 (Sutton, J., concurring). Lenity also avoids several "uninvited oddities [that] arise if courts but not agencies must adhere to the rule of lenity." *Id.* at 732–33 (collecting some of them). By applying lenity in this setting, last of all, courts would avoid *incentivizing* Congress to enact hybrid statutes that duck under lenity's imperatives, to say nothing of other imperatives in construing criminal laws.

Where I part ways with the court is over its conclusion that, even though the rule of lenity ought to control here, we must defer to the government's position under *Chevron* all the same.

The disagreement boils down to the meaning of one sentence in one footnote. *Babbitt v. Sweet Home Chapter of Communities for a Great Oregon*, 515 U.S. 687 (1995), involved a facial challenge to a regulation interpreting a provision of the Endangered Species Act that imposed both civil and criminal liability. *Id.* at 691–93. The Supreme Court decided it "owe[d] some

degree of deference" to the Department of Labor's interpretation, *id.* at 703–04, and cited *Chevron* in the process. Then, in a footnote, it said that it "ha[d] never suggested that the rule of lenity should provide the standard for reviewing facial challenges to administrative regulations whenever the governing statute authorizes criminal enforcement." *Id.* at 704 n.18. This statement does not, as the court claims, require us to apply *Chevron*. If it did, the footnote would have (silently) overruled an entire line of cases that "hold that, if Congress wants to assign responsibility for crime definition to the executive, it must speak clearly." *Carter*, 736 F.3d at 734 (Sutton, J., concurring); *see, e.g.*, *United States v. Grimaud*, 220 U.S. 506, 519 (1911); *see also Touby v. United States*, 500 U.S. 160, 165–67 (1991). And the footnote expressly limits itself to "facial challenges," the sorts of claims that raise arguments—say that the regulation exceeded the agency's authority and thus was unenforceable in all of its applications—that have no connection to the rule of lenity. Today's case does not involve a facial challenge.

Whatever this footnote and its inscrutable reference to facial challenges meant then, cases since *Babbitt* have not followed the reading the court finds itself constrained to follow. In one case, the Court declined to address how the rule of lenity applied in relation to *Chevron*, hardly necessary if *Babbitt* answered the question for cases that did not involve facial challenges to regulations. *See Solid Waste Agency v. U.S. Army Corps of Eng'rs*, 531 U.S. 159, 174 & n.8 (2001). In another case, the Court concluded that the rule of lenity provided the rule of decision, hardly possible if the issue had been decided the other way. If a statute "has both criminal and noncriminal applications," the Court explained, the presence of ambiguity triggers the rule of lenity "[b]ecause we must interpret the statute consistently, whether we encounter its application in a criminal or noncriminal context." *Leocal*, 543 U.S. at 11 n.8. And in a concurrence from the denial of certiorari from a securities law case, two Justices agreed that "*Babbitt*'s drive-by" footnote "deserves little weight." *Whitman v. United States*, 135 S. Ct. 352, 354 (Scalia, J., statement respecting denial of certiorari, joined by Thomas, J.).

Perhaps something else gives the court pause today—the potential sticker shock of transforming a government-always-wins canon (*Chevron*) into a government-always-loses canon (rule of lenity). But that may not be where the Court's cases necessarily lead. The Court's recent cases, as shown, just *require* two things: that the one-statute/one-interpretation rule

governs dual-role statutes, and *Chevron* does not apply to that one interpretation. Those two requirements, however, may not dictate when the rule of lenity governs and when it does not. Yes, the rule of lenity frequently may dictate that one interpretation but that need not invariably be the case. Statutory "ambiguity" may mean one thing under *Chevron* and something else under the rule of lenity. If American Inuits have more than one way to describe snow, American lawyers may have more than one way to describe ambiguity. *See* Bill Bryson, The Mother Tongue 14–15 (2001). Under *Chevron*, courts will defer to an agency interpretation if the relevant statute "is silent or ambiguous with respect to the specific issue." 467 U.S. at 843. It remains to be seen whether the same type of ambiguity triggers the rule of lenity. *See, e.g.*, *Huddleston v. United States*, 415 U.S. 814, 831 (1974). *Chevron*'s domain and the rule of lenity's domain thus may not necessarily overlap in some cases.

What matters for present purposes is that *Chevron* has no role to play in construing hybrid statutes. Whether the rule of lenity necessarily will provide the answer in all of these cases is another matter, one for the Court ultimately to decide. In some settings, it may turn out, the Court simply will apply the normal rules of construction unaided by a zero-sum default rule, and will look to the rule of lenity only in the kinds of interpretive disputes that require it.

One last point. An exception to *Chevron* for dual-role statutes would not be the least bit unusual. Deference under that rule is categorically unavailable, the Supreme Court has held, in many settings: (1) agency interpretations of statutes the agency is not "charged with administering," *Metro. Stevedore Co. v. Rambo*, 521 U.S. 121, 137 n.9 (1997); (2) agency interpretations of "the scope of the judicial power vested by [a] statute," such as the availability of a private right of action, *Adams Fruit Co. v. Barrett*, 494 U.S. 638, 649–50 (1990); *see Alexander v. Sandoval*, 532 U.S. 275, 288–91 (2001); (3) agency interpretations that result from procedures that were not "in the exercise" of the agency's authority "to make rules carrying the force of law," *United States v. Mead Corp.*, 533 U.S. 218, 226–27 (2001); (4) agency interpretations with respect to "extraordinary cases" where it is unlikely Congress "intended . . . an implicit delegation" to the agency, *King v. Burwell*, 135 S. Ct. 2480, 2488–89 (2015); and (5) agency interpretations of criminal statutes, *Abramski*, 134 S. Ct. at 2274. An exception for statutes with civil *and* criminal consequences fits easily alongside these

exceptions and originates from the same place as the last one.  Indeed, it is exceedingly difficult to understand how *Chevron* could prevail in a dual-statute case.  Since the founding, it has been the job of Article III courts, not Article II executive-branch agencies, to have the final say over what criminal laws mean.  I would honor that imperative here and reject the idea that Congress can end-run this principle by giving a criminal statute a civil application.

For these reasons, I concur with much of the court's reasoning but must disagree with its conclusion.